## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIRLEY LANE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF HEMPSTEAD and BUSPATROL AMERICA, LLC,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Shirley Lane ("Plaintiff"), individually on behalf of herself and all others similarly situated, by her attorneys, Hach Rose, Schirripa and Cheverie LLP, brings this class action against Defendants Town of Hempstead ("Hempstead") and BusPatrol America, LLC ("BusPatrol") (collectively, "Defendants") and alleges on personal knowledge as to herself and the investigation of Plaintiff's counsel, and information and belief as to others, as follows:

### I.    INTRODUCTION

1.      This is a putative class action brought against Defendants seeking damages sustained by Plaintiff and the Class members as a direct and proximate result of Defendants' fraudulent concealment and/or inducement and unjust enrichment in connection with Defendants' practice of routinely certifying unauthorized and invalid Notices of Liability ("NOL"s), alleging violations of New York Vehicle and Traffic Law ("VTL") § 1174-a and Town of Hempstead Code ("Hempstead Code") § 186-2(B)(2) (collectively, "Stop-arm Violations"), and New York Civil Rights Law § 11.

2.      VTL § 1174(a) requires that a driver stop their vehicle before reaching a school bus that has stopped and extended "a red visual signal" while discharging or picking up a

passenger and cannot "proceed until such school bus resumes motion, or until signaled by the driver or a police officer to proceed."

3.      VTL § 1174(d) imposes a penalty on drivers when they overtake and pass a stopped school bus, provided, among other things, that the bus (1) activates a stop-arm, (2) has stopped in relation to receiving or discharging school bus passengers, and (3) has appropriate markings and equipment, such as flashing lights necessary to warn drivers of a stopped bus. VTL§ 1174-a 1-a further provides that any city, town or village that has adopted a local law or ordinance establishing a demonstration program imposing liability on the owner of a vehicle for failure to comply with VTL § 1174(a)  may enter into an agreement "with a school district within such county, city, town or village" for the installation and use of a school bus photo violation monitoring system to detect such violations and assess fines.  The  entry into such an agreement is mandatory before proceeding:  "No mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless such county, city, town or village and such district enter into an agreement for such installation and operation."  *Id.*

4.      Hempstead Code § 186-2(B)(2) similarly provides that. under a program pursuant to VTL § 1174, "[n]o mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless the Town and such school district enter into an agreement for such installation and operation."

5.      As reported *by Newsday* on January 23, 2025, the school districts of Baldwin, Hempstead, Lawrence Union Free School District ("Lawrence") and Valley Stream Union Free School District 13 ("Valley Stream") never agreed with the Town of Hempstead to participate in the school bus Stop-arm violations program. Leaders of each of the four districts confirmed

to *Newsday* that the districts had not opted into the program.[1]

6.      Overall, the Town of Hempstead issued more than 80,000 school bus camera tickets in and around those four districts in over the prior two years – a total of $20 million.[2]  A January 24, 2025, *Newsday* article also reported that the Town of Hempstead sent a letter to BusPatrol demanding refunds to all drivers who were improperly fined.  A video embedded in the online version of the article noted that. the Town of Hempstead is "the authority who issues the tickets," with the Town receiving 55% of the revenue and Bus Stop receiving 45% of the revenue generated from the program.[3] As of this date, BusPatrol has not publicly responded to the letter, and given the revenue split between the Town and BusPatrol, it is highly unlikely that BusPatrol will accede to the Town of Hempstead's demand.

7.      Without the agreement of the four school districts with the Town of Hempstead as required by these provisions, the Defendants unlawfully installed school bus photo violation monitoring systems and issued NOLs to vehicle owners for Stop-bus violations within those school districts and have routinely collected fines for these unauthorized and invalid NOLs.

8.      Plaintiff also brings action seeking declaratory judgment in accordance with Rule 57 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and 28 U.S.C. § 2201, declaring the practices complained of herein related to the issuance of NOLs for Stop-arm

---

[1] Payton Guion, Town of Hempstead issued 80,000 school bus camera tickets in districts that don't participate in program, *Newsday* (Jan. 23, 2025), available at https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib.

[2] *Id.*

[3] Payton Guion, Hempstead Town: Toss, refund BusPatrol tickets improperly issued in school districts that didn't join program, *Newsday* (Jan. 24, 2025), available at https://www.newsday.com/long-island/investigations/hempstead-bus-camera-tickets-k8fa7q6s.

Violations are unlawful under law.

9.      Upon information and belief, Plaintiff is one of thousands of individuals who paid fines for alleged Stop-Arm Violations.

10.     The Notices of Liability ("NOL") that Defendants were certifying, issuing and mailing were unauthorized and therefore invalid because the NOLs were issued on behalf of local school districts that did not authorize Defendants to write bus camera tickets on their behalf. Such certification and issuance of the NOLs were unlawful applications of VTL 1174-a and in contravention of the terms of the statute and in violation of Plaintiff and the putative Class's rights.

11.     The school districts of Baldwin, Hempstead, Lawrence and Valley Stream never authorized the issuing of tickets on their behalf.  By issuing NOLs in these school districts, Defendants misrepresented that those districts agreed that Defendants could issue tickets on their behalf and omitted to state that those school districts did not agree.

12.     Unfortunately for Plaintiff and the Class, Defendants, starting on August 6, 2019, wrongfully issued NOLs with Technician's Certificates in the Baldwin, Hempstead, Lawrence and Valley Stream school districts – even though those districts did not authorize the issuing of tickets on their behalf.  In doing so, Defendants violated VTL §§ 1174-A and Hempstead Code § 186-2(B)(2), all in violation of the rights of Plaintiff and the Class.

13.     As a result of Defendants' misconduct, Plaintiff and the Class have suffered injury in fact, including economic damages in the form of fines paid and the threat of ongoing violations of the VTL and the Hempstead Code.

14.     By knowingly certifying and issuing these improper NOLs, Defendants sought to induce Plaintiff and members of the Class to make payments to Defendants for alleged Stop-

Arm violations in contravention of the terms of the statute and in violation of Plaintiff and the putative class's rights.

15.    Defendants accepted payment of fines from Plaintiff and Class members for unauthorized and therefore invalid Stop-Arm Violation tickets which were certified and issued by Defendants in contravention of the terms of the statute and in violation of Plaintiff and the Class's rights.

16.    Defendants' conduct, as alleged herein, violated the VTL and Hempstead Code, and Defendants were unjustly enriched thereby. Plaintiff therefore brings this class action for declaratory and injunctive relief and to recover damages and fees and costs, as well as restitution and other equitable relief from Defendants as a result of their unlawful actions.

## II.    PARTIES

17.    Plaintiff Shirley Lane is a citizen of the State of New York and a resident of Nassau County. Plaintiff Lane holds a valid New York State driver's license and is authorized to and does operate a motor vehicle throughout the State of New York. As set forth herein, Plaintiff received a NOL related to an alleged violation of VTL § 1174(a) in the Lawrence School District, and after contesting the ticket and being found guilty by a traffic court, paid a $250.00 fine.

18.    Defendant Town of Hempstead is a municipal corporation duly existing under and by virtue of the laws of the State of New York, with its principal office located at 1 Washington Street, Hempstead, New York.

19.    Defendant BusPatrol America, LLC ("BusPatrol") is a limited liability corporation with its principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079. Defendant BusPatrol is registered with the New York State Department of State as

a foreign limited liability company in New York County. BusPatrol is a private, for-profit company that contracts with local governments to install on buses equipment to extend a "Stop-Arm" to warn motorists to stop and not pass a bus that is stopped to pick up or drop off passengers, monitor compliance with the Stop-Arm, gather evidence, identify violations, issue notices, compile evidence packets, and collect and disburse penalties. In exchange, BusPatrol receives a substantial portion of the revenues received, including 45% of the revenue from the Town of Hempstead program. with the Town receiving 55%.

20. BusPatrol directly or indirectly installed such school bus cameras onto school buses for school districts that did not come to an agreement with the Town of Hempstead (the "Town"), and as a result, Plaintiff and the other Class members received NOLs to pay fines for violations of VTL §§ 1174(a) and 1174A which were issued in violation of law.

## III.    JURISDICTION AND VENUE

21. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiff and all or almost all members of the Class are citizens of a state different than that of Defendant BusPatrol, and the amount in controversy exceeds the sum of $5,000,000, exclusive of costs and interest.

22. This Court has personal jurisdiction over Defendants because the claims asserted in this complaint arise from Defendants' conduct within this District. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on governmental activities and/or a business venture in this District, committed a statutory violation within this District related to the allegations made herein, and caused injuries to Plaintiff and the putative Class Members, which arose out of the acts and omissions

that occurred in the District during the Class Period.

23.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.    CLASS ACTION ALLEGATIONS

24.    Plaintiff brings her claims as a class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of herself and on behalf of the owners of vehicles who were issued NOLs since April 1, 2022 pursuant to VTL 1174-a and/or Hempstead Code § 1174-a within school districts in the Town of Hempstead that either have not opted into the VTL §1774-a and/or Hempstead Code § 186 programs or have explicitly opted out of those provisions (the "Class").

25.    Excluded from the Class are Defendants, their governing agencies, parents, subsidiaries, affiliates, employees, officers and directors; any co-conspirators; federal governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies and instrumentalities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

26.    The members of the proposed Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least tens of thousands of NOLs that have been issued wrongfully. Class members can be identified readily through discovery from records maintained by Defendants, including traffic ticket records.  Class members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

27.      Plaintiff's claims are typical of the claims of the Class, as all Class members were and are similarly affected by Defendants' wrongful conduct in violations of the statutory and common law protections complained of herein. Plaintiff and each of the Class members received NOLs that were wrongfully issued by Defendants. Defendants knowingly concealed, suppressed, and/or misrepresented or omitted that the NOLs at issue herein were not authorized by the local school boards, with the intent that Plaintiff and other Class members rely thereon in order to coerce the Plaintiff into wrongly paying fines and fees to Defendants. Plaintiff and the other Class members have sustained substantial damages, resulting from Defendant's omissions and/or misrepresentations related to the NOLs.

28.      Plaintiff will fairly and adequately represent and protect the interests of the other Class members and has retained counsel competent and experienced in class action and consumer fraud litigation. Plaintiff and her counsel are aware of no conflicts of interest between Plaintiff and the other members of the putative Class.  Plaintiff and her counsel are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution. Plaintiff's attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

29.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Given the common NOLs issued to Plaintiff and the Class, and the uniform misrepresentations and omissions regarding the validity of the monitoring process itself, all not disclosed to the Plaintiff and members of the putative Class, Plaintiff is not aware of any difficulties in managing the action as a class action.  Pursuing separate actions can create a risk of inconsistent or varying

adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

30.    Common questions of law and fact exist as to all putative Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)    whether Defendants routinely approved and collected fines for patently invalid NOLs alleging Stop-arm Violations that contained false certifications;

(b)    whether Defendants routinely approved and collected fines for unauthorized and legally improper NOLs;

(c)    whether Defendants were unjustly enriched due to its issuance of unauthorized NOLs which contained misrepresentations or omissions of information designed to induce vehicle owners to remit payment for violations of VTL § 1174 and Hempstead Code § 186-2(B)(2).

(d)    whether Defendants fraudulently induced Plaintiff and Class members to remit payment and associated fees for unauthorized Stop-Arm Violations;

(e)    whether Defendants unlawfully violated VTL §1174-a and/or Hempstead Code § 186-2(B)(2) in contravention of the terms of the statute and in violation of Plaintiff's and the putative Class's rights when it issued patently invalid NOLs and approved and collected the fines;

(f)    whether Defendants should be enjoined from future violations of  VTL §1174-a and/or Hempstead Code § 186-2(B)(2) since the Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Class as a whole.

31.    As a result of Defendants' conduct, Defendants are liable to Plaintiff and the Class for the full amount of any loss suffered by Plaintiff and the Class and any other actual,

statutory or other applicable damages.

32.    Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive and declaratory relief with respect to the members of the Class as a whole.   Declaratory judgment and injunctive relief is also appropriate to prevent Defendants from engaging in ongoing or future violations.

33.    Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

## V.    FACTUAL ALLEGATIONS

### A.    VTL § 1174

34.    In 1956, New York State created VTL § 1174 (the "Underlying Charging Violation") which made it a violation to pass a school bus under certain conditions, when a bus was either loading or unloading passengers. It states in relevant part:

> Overtaking and passing school bus. (a) The driver of a vehicle upon a public highway, street or private road upon meeting or overtaking from either direction any school bus marked and equipped as provided in subdivision twenty of section three hundred seventy-five of this chapter which has stopped on the public highway, street or private road for the purpose of receiving or discharging any passengers, or which has stopped because a school bus in front of it has stopped to receive or discharge any passengers, shall stop the vehicle before reaching such school bus when there is in operation on said school bus a red visual signal as specified in subdivision twenty of section three hundred seventy-five of this chapter and said driver shall not proceed until such school bus resumes motion, or until signaled by the driver or a police officer to proceed….

### B.    The Enactment Of VTL §1174-a and the Creation of the Stop Arm Violation Program in New York State

35.    On August 6, 2019, New York's Governor, Andrew Cuomo, signed into law an amendment to the VTL § 1174-a, which assesses liability to the vehicle owner where the vehicle violated VTL § 1174(a).

36.    This statute was enacted to enable localities to issue NOL through the use of

automatic cameras on buses to detect violations.  The amendment authorized any county, city, town or village located within a school district to adopt and amend a local law or ordinance establishing a demonstration program which imposed monetary liability of the owner of a vehicle for failure to comply with VTL § 1174(a).

37.     Additionally, VTL § 1174-a further authorized and empowered the counties, towns or villages to equip school buses to operate "school bus photo violation monitoring systems," which could be either stationary or mobile, and were designed to capture images and/or video of vehicles violating VTL § 1174(a).

38.     Critically, VTL § 1174-a(a)1 provides that such monitoring systems could only be installed and operated if the county, city, town, or village agrees with the local school district that the system can be installed:

> Such demonstration program shall empower such county, city, town or village to install and operate school bus photo violation monitoring systems which may be stationary or mobile, and which may be installed, ***pursuant to an agreement with a school district*** within such county, city, town or village, on school buses owned and operated by such school district or privately owned and operated for compensation under contract with such district. Provided, however, that (a) no stationary school bus photo violation monitoring system shall be installed or operated by a county, city, town or village except on roadways under the jurisdiction of such county, city, town or village, and (b) ***no mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless such county, city, town or village and such district enter into an agreement for such installation and operation***.  [Emphasis added.]

39.     A unique element of this violation is that it is issued to the owner of the vehicle, regardless of whether they were the one driving the vehicle or even aware that the car was being driven at all, as the amendment provides for liability for the owner of a vehicle who passes a bus that is part of this program.  Violations given pursuant to this program can result in fines of not less than $250.00 and up to $400.00 for a first violation and up to $750.00 for a second violation in a three-year period.  *See* VTL § 1174(c).

40.      In accordance with this law, local laws and ordinances were adopted throughout the State of New York, authorizing the installation, and operating of school bus photo violation monitoring systems on buses.

**VI.      Town of Hempstead's Institution of the Stop-Arm Violation Program**

41.      Among them was Hempstead Code Chapter 186 ("Failure to Stop for school, Buses"), effective on April 1, 2022, which, *inter alia*, authorized the use of school bus monitoring systems in the Town to capture violations of VTL § 1174 and to send NOLs to each owner of each vehicle alleged to be liable for a violation of VTL § 1174(a).  Section 186-2(B)(2), provided, however, that "No mobile school bus photo violation monitoring system shall be installed or operated on any such school buses unless the Town and such school district enter into an agreement for such installation and operation."   Under § 186-3, the owner of a of a vehicle which violated VTL § 1174 was liable for monetary penalties of $250 for a first violation, $275 for a second violation within 18 months of the first violation, $300 for a third or subsequent violation within 18 months, and an additional $25 penalty for each failure to respond to a NOL within the prescribed time period.

42.      However, as reported in *Newsday*, the Baldwin, Hempstead, Lawrence and Valley Stream School Districts did not enter into any agreements with Defendants to install such monitoring measures and equipment, as required by VTL§ 1174-a and Hempstead Code § 186(B)(2).

43.      Despite the absence of mandatory agreement between the town of Hempstead and the four school districts to install and operate the bus stop operating equipment, Defendants nevertheless issued NOLs to owners of vehicles which were captured in photos purportedly violating VTL § 1174(a) in those districts and. assessing fines four of those purported violations.

As such, the NOLs are unlawful applications of VTL § 1174-A and in contravention of VTL § 174-a and Hempstead Code § 186-2(B)(2), and in violation of Plaintiff and the Class's rights.

44.      Defendants know full well that the school districts of Baldwin, Hempstead, Lawrence and Valley Stream did not enter into agreements with the Town of Hempstead and that vehicle owners are unaware of that information.  Vehicle owners thereby were misled by Defendants into believing that the NOLs issued to them were valid, and thereafter into paying fines and associated fees.

45.      Defendants were wrongfully enriched and profited from every payment made on each one of these NOLs, as 55% of the fines and fees associated with it and collected were remitted to the Town of Hempstead by BusPatrol, with BusPatrol retaining the other 45%.

**VII.    The Town of Hempstead Contracts with BusPatrol to Implement and Monitor Compliance with the Stop-Arm Program**

46.      In order to enforce Hempstead Code § 186 and administer a stop-arm violation monitoring system implemented under the Code, the Town of Hempstead contracted with BusPatrol.

47.      BusPatrol touts "[t]he world's most trusted & deployed stop-arm safety program."[4] The Company claims to provide "seamless stop-arm program" in partnership with communities, including, among other things: supplying and installing the safety technology, managing citations, providing cloud-based software for online viewing of the video footage, providing secure payment and processing services, creating evidence packages for law enforcement review and use, ongoing support and maintenance of safety technology, call center support for violators,  managing requests for court hearings, and providing municipalities, towns

---

[4] *See* https://buspatrol.com/.

and school districts with monthly reports and access to data.  Pursuant to agreements with municipalities, towns and school districts, BusPatrol provided them with these services.

48.      BusPatrol further marketed that its "AI-enabled stop-arm camera school bus safety program is provided at no cost." This made possible through a "violator-funded business model."[5]  Thus, this program is attractive to cash-starved counties and municipalities because the services require no capital outlay from the municipalities.

49.      BusPatrol contracted to provide such services to counties and municipalities, including the Town of Hempstead.  BusPatrol represents its purported trustworthiness and acknowledges the roles it plays in installing and maintaining the photo monitoring systems and in enforcing the laws themselves through the review of evidence, dissemination of NOLs and setting up court dates.[6]

**VIII.   The Lawrence School District Expressly Disavows Such Tickets as "Invalid"**

50.      On November 25, 2024, the Lawrence school district published a letter signed by Murray Forman, its President, stating as follows: "This letter and affidavit  is to confirm that the Board of Education of the Lawrence Union School Free School District (District 15) … has not entered into any agreement with the School Bus safety Program of the Town of Hempstead to issue summonses within the boundaries of the Lawrence Union Free School District."  Citing Hempstead Code § 186-2(B), the letter also stated that "No mobile school bus photo violation monitoring system shall be installed or operated … unless the town and such school district enter into an agreement for such installation and operation."[7]

51.      The letter concluded: "Given that there is no such agreement between the

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

Town of Hempstead and the Lawrence UFSD there is no authorization for summonses to be issued on behalf of the Lawrence UFSD at any location within the borders of School District 15. Summonses issued within the boundaries of the district are therefore void and cannot be upheld."[8]

### IX.    The Baldwin School District Calls the Tickets "Baffling" And All Four School Districts Confirm That The Bus Stop Ticketing Program Was Not Authorized

52.    As reported in *Newsday* on January 23, 2025, the Baldwin school district also described the tickets as lacking authorization:[9]

> "It's baffling to me that tickets would be issued when they know they did not have the authority to do it," Baldwin Union Free School District Superintendent Shari Camhi told Newsday.

53.    *Newsday* also reported that leaders of the Baldwin, Hempstead, Lawrence and Valley Stream 13 school districts confirmed to Newsday that the districts had not approved the issuance of bus camera tickets. Nevertheless, officials in two of the districts station that their school buses are equipped with cameras and one Superintendent stated that those cameras we're generating tickets, which would conflict with the law.[10]

### X.    Plaintiff Receives A NOL For a School Bus Stop Violation

54.    On or about March 21, 2024, BusPatrol monitoring devices perceived that Plaintiff, in the Lawrence school district, passed a bus that had the Stop-Arm extended. The Town of Hempstead subsequently, and wrongfully, sent to Plaintiff a ticket for the alleged

---

[8] *See* https://core-docs.s3.us-east-1.amazonaws.com/documents/asset/uploaded_file/828/Lawrence_School_District/5050827/Stop_Camera_Ticket_Letter.pdf.

[9] Payton Guion, Town of Hempstead issued 80,000 school bus camera tickets in districts that don't participate in program, *Newsday* (Jan. 23, 2025), available at https://www.newsday.com/long-island/investigations/hempstead-buspatrol-camera-tickets-ik8spyib

[10] *Id.*

violation, indicating a fine of $250.00.

55.     Plaintiff pled not guilty and requested a court date.

56.     On or about January 9, 2025, Plaintiff appeared before the traffic court in Garden City, NY.  Despite there being no agreement by the school districts at issue – and despite the Lawrence school district explicitly disavowing the tickets – Plaintiff was found guilty. Plaintiff  had no choice but to pay the fine of $250.00.

**XI.     The Town of Hempstead Admits the Tickets Were Issued Unlawfully**

57.     In response to *a Newsday* investigation into the unauthorized and invalid Stop-Arm tickets, the Town of Hempstead sent a letter to BusPatrol demanding refunds to all drivers who were improperly fined.  A video embedded in the online version of the article noted that. the Town of Hempstead is "the authority who issues the tickets," with the Town receiving 55% of the revenue and Bus Stop receiving 45% of the revenue.  As of this date, BusPatrol has not publicly responded to the letter, and given the revenue split between the Town and BusPatrol, it is highly unlikely that BusPatrol will accede to the Town of Hempstead's demand "The Town of Hempstead says school bus camera tickets written to drivers in school districts that never agreed to participate in the town's program should be thrown out, questioning their legality and calling for all money from those tickets to be refunded."

## CLAIMS FOR RELIEF

### COUNT I
### FOR VIOLATION OF VTL § 1174-A and HEMSTEAD CODE § 186(2)(B)
### (Against All Defendants)

58.     Plaintiff repeats and re-alleges the preceding allegations as though set forth fully herein.

59.     Under the authority granted to them by VTL § 1174-a and Hempstead Code § 186(2)(B), Defendants only had authority to issue Stop-Arm tickets for violations occurring

within school districts that had agreed with the Town of Hempstead to participate in the Stop-Arm monitoring program.

60.     Baldwin, Hempstead, Lawrence, and Valley Stream 13 school districts did not agree to participate in the Stop-Arm monitoring program.  Defendants therefore had no authority to issue NOLs for alleged Stop-Arm violations occurring within these school districts.

61.     Despite having no authority to issue tickets for alleged Stop-Arm violations in the Baldwin, Hempstead, Lawrence, and Valley Stream 13 school districts, the Defendants issued more than 80,000 NOLs for alleged Stop-Arm violations in these specific school districts.

62.     Despite knowing that they had no authority under law to issue such tickets, Defendants implemented the Stop-Arm monitoring program in these school districts, issued unauthorized NOLs, and willfully took money for purported violations that they knew they were not authorized to take under the applicable statutes.

63.     Defendants' actions were contrary to the statutory authorizations granted to them and, thus, were in violation of the law.

64.     As a result, the NOLs issued by Defendants for alleged Stop-Arm violations within these school districts were invalid as a matter of law.

65.     Accordingly, Plaintiff and Class members who paid Defendants based on their unauthorized and invalid NOLs must be reimbursed fully, and any extant NOLs must be declared null and void and withdrawn.

66.     Due to the willful, intentional, reckless, and wanton conduct of Defendants, which conduct was intended to and did harm the public, punitive damages should be awarded against Defendant BusPatrol.

## COUNT II
## FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT
### (Against All Defendants)

67.     Plaintiff repeats and re-alleges the preceding allegations as though set forth fully herein.

68.     At all relevant times, Defendants falsely represented to Plaintiff and Class members that NOLs concerning the alleged Stop-Arm Violations were legally authorized and sufficient.

69.     Defendants engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiff and Class members rely upon such concealments, suppressions and omissions.

70.     Defendants have and continue to have a duty to inform Plaintiff and Class members that their NOLs related to their alleged Stop-Arm Violations were not legally authorized.

71.     Based upon Defendants' false representations and/or omissions and/or concealments of these material facts, Plaintiff and Class members remitted payment and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

72.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

73.     As a result of Defendants' deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

<u>**COUNT III**</u>
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

74.     Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

75.     At all relevant times, Defendants falsely represented that the NOLs issued to Plaintiff and Class members concerning their purported Stop-Arm Violations were legally authorized and sufficient.

76.     At the time Defendants made these representations to Plaintiff and Class members, Defendants should have known that these representations were false or that Defendants made them without knowledge of their truth or veracity.

77.     Defendants had and continues to have a duty to inform Plaintiff and Class members that their NOLs related to their alleged Stop-Arm Violations were not legally authorized and therefore not valid.

78.     Based upon Defendant's false representations and/or omissions and/or concealments of these material facts, Defendants induced Plaintiff and Class members to rely upon Defendant's misrepresentations and/or omissions and to remit payment and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

79.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for unauthorized NOLs concerning alleged Stop-Arm Violations.

80.     As a result of Defendants' deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

81.     Defendants engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the validity of the issued NOLs.

82.     Defendants intended that Plaintiff and each member of the Class rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

83.     Given the Town of Hempstead's status as a governmental entity and BusPatrol's position as a leader in Stop-Arm monitoring, Plaintiff and reasonable drivers trusted and relied upon Defendants' representations regarding the validity of the NOLs.

84.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and other Class members have sustained damages in an amount to be proven at trial.

## COUNT IV
## VIOLATION OF NEW YORK CIVIL RIGHTS LAW § 11
### (Against All Defendants)

85.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

86.     As set forth above, the fines issued pursuant to the fraudulent NOLs described herein were imposed upon individuals whose alleged violation of VTL § 1174-a and Hempstead Code § 186-2 occurred within a school district that had not entered into an agreement with the Town of Hempstead regarding participation in the Stop-Arm Law program.

87.     Without such agreement between a given school district and the Town, the installation and operation of school bus monitoring systems on school buses within that school district, and Defendants' issuance of NOLs and receipt of monies from vehicle owners based upon purported violations of VTL § 1174(a) captured on those systems, is unlawful.

88.    Plaintiff and Class members are persons within the meaning of Article 1, Section 6, of the New York State Constitution.

89.    New York Civil Rights Law § 11 requires that the issuance of fines be based upon "reasonable cause," which cannot possibly exist for the issuance of fines pursuant to the unlawful use of school bus photo monitoring systems,

90.    Defendants issued NOLs for alleged Stop-arm Violations to Plaintiff and Class members that were patently invalid as they were unauthorized by statute.

91.    Defendants certified and issued NOLs for alleged Stop-arm Violations to Plaintiff and Class members that were unauthorized and therefore invalid.

92.    At all relevant times, Defendants were aware that Plaintiff's and Class members' NOLs were unauthorized and invalid.

93.    At all relevant times, Defendants failed to stop its Law Enforcement employees from approving these NOLs or to approve contractors' issuance of the unauthorized and invalid.

94.    Rather, Defendants allowed these unauthorized and invalid NOLs to be approved and issued which were in contravention to the authorizing statute and Hempstead Code sections.

95.    At all relevant times, Defendants failed to notify Plaintiff and Class members that their NOLs for alleged Stop-Arm Violations were unauthorized and therefore invalid and were issued in contravention to the authorizing statute.

96.    At all relevant times, Defendants failed to, *sua sponte*, dismiss Plaintiff's and Class members' unauthorized and therefore invalid.

97.    Defendants continued to receive shares of the payment of fines from Plaintiff

and Class members for these NOLs that were unauthorized and invalid.

98.    Defendants caused Plaintiff and Class members to incur associated fees for these NOLs that were unauthorized and therefore invalid and which were certified and issued in contravention of the authorizing statute.

99.    At all relevant times, Defendants have failed to offer Plaintiff and Class members full refunds, plus interest, of the portion of the fines and associated fees paid for unauthorized and invalid NOLs that was received by Defendants.

100.    At all relevant times, Defendants represented that Plaintiff and Class members' NOLs were authorized and valid.

101.    Defendants engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiff and Class members rely upon such concealments, suppressions and omissions which were made in contravention of the authorizing statute.

102.    Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

103.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for unauthorized and invalid NOLs which were issued contravention of the authorizing statute.

104.    To the extent Plaintiff and Class members pled guilty to the alleged violations in these NOLs, Plaintiff and Class members would not have done so but for Defendants' misrepresentations and/or omissions which were in contravention of the authorizing statute.

105.    Defendants collected fines for these alleged violations from Plaintiff and Class members and caused them to incur associated fees, depriving them of their property without due

process in violation of New York Civil Right Law § 11.

106.     As a result of Defendants' deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgment and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

**COUNT V**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

107.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

108.     Defendants have been unjustly enriched by collecting fines from the recipients of the NOL, based on alleged violations of school bus stop arm signals.

109.     Defendants knew or should have known that the NOLs it approved and certified were issued without any statutory authority since the school districts of Baldwin, Hempstead, Lawrence and Valley Stream Union Free School District 13 never authorized the issuing of tickets on their behalf under VTL 1174-a and Hempstead Code § 186-2(B)(2).

110.     Nevertheless, from approximately August 6, 2019 through the present, and continuing, Plaintiff and putative Class members received unauthorized NOLs with Technician's Certificates which contained material misrepresentations or omissions regarding their legality pursuant to VTL § 1174-a and Hempstead Code § 186-2(B)(2), in contravention of the terms of these provisions and in violation of Plaintiff and the Class's rights when the Town of Hempstead issued these unauthorized and therefore invalid NOLs and approved and collected the fines associated with them

111.     Defendants unlawfully retained money belonging to Plaintiff and Class members.

112.     Defendants have been unjustly enriched through its retention of money belonging to Plaintiff and Class members.

113.     Plaintiff and the Class members are entitled to restitution as it is unjust and inequitable for Defendants to retain such money based on the unlawful conduct described above. Such money belongs in good conscience to Plaintiff and Class members.

114.     Plaintiff and putative Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

115.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## COUNT VI
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 AND FED. R. CIV. P. RULE 57
### (Against All Defendants)

116.     Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

117.     Plaintiff seeks declaratory judgment to resolve the matter of whether practices of Defendants which entail issuing the NOLs as described above, where there is no statutory authority to do so are in contravention of the VTL 1174-A and constitute a violation of Plaintiff and Class members' rights under the New York State Constitution and common law.

118.     An actual case or justiciable controversy exists regarding the legality of these practices as Defendants continue to issue these NOLs which are unauthorized and therefore invalid.

119.     The issuance of declaratory relief by this Court will terminate some or all of

the existing controversy between the parties and will provide certainty to the regarding the validity of the issuance of these NOLs.

120.    By reason of the foregoing, Plaintiff and Class members are entitled to declaratory judgment declaring that the practices complained of herein are unlawful under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated Class members, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendants bear the costs of any notice sent to the Class;

C. Awarding Plaintiff and the Class members compensatory, statutory, actual, or other monetary damages, in an amount to be determined at trial;

D. Declaring that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the issuance of unauthorized NOLs or order Defendants to make full restitution to Plaintiff and the members of the Class;

E. Awarding restitution and other appropriate equitable relief;

F. Granting an injunction against Defendants to enjoin it from issuing NOLs in connection with Stop-Arm Violations in school districts that did not agree to install monitoring equipment, as set forth herein;

G. Granting an Order requiring Defendants to fully and adequately disclose the which school districts have not agreed to install monitoring equipment, as set forth herein;

H. Ordering a jury trial and damages according to proof;

I. Enjoining Defendants from continuing to engage in the unlawful and unfair acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

K. Awarding pre-judgment and post-judgment interest;

L. Awarding punitive damages against Defendant BusPatrol; and

M.  Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  January 31, 2025

Respectfully submitted,

*/s/ Frank R. Schirripa*
Frank R. Schirripa
Daniel Rehns
Kurt Hunciker
Jay P. Saltzman
**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**
112 Madison Avenue10th Floor
New York, New York 10016
Main: 212-213-8311
Facsimile: 212-779-0028
fschirripa@hrsclaw.com
drehns@hrsclaw.com
khunciker@hrsclaw.com
jsaltzman@hrsclaw.com

*Attorneys for Plaintiff and Putative Class Members*