**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rachel Rotenberg and Shlomo Marks, *on behalf of themselves and all others similarly situated*, <br><br>                                 Plaintiffs, <br><br>               -v- <br><br> BusPatrol America LLC and Town of Hempstead, <br><br>                           Defendants. | 2:25-cv-438 (NJC) (SIL) |
| Guy Tsadik, *on behalf of himself and all others similarly situated*, <br><br>                               Plaintiff, <br><br>               -v- <br><br> BusPatrol America, LLC, <br><br>                           Defendant. | 2:25-cv-496 (NJC) (SIL) |
| Shirley Lane, *individually and on behalf of all others similarly situated*, <br><br>                               Plaintiff, <br><br>               -v- <br><br> Town of Hempstead and BusPatrol America LLC, <br><br>                           Defendants. | 2:25-cv-566 (NJC) (SIL) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court are three putative class action lawsuits bringing similar and overlapping claims arising out of the Town of Hempstead's (the "Town") alleged implementation of a traffic law enforcement program, pursuant to which it engaged private vendor BusPatrol America, LLC ("BusPatrol") to equip local school buses with cameras and issue traffic tickets to the owners of vehicles identified as passing a stopped school bus in violation of New York Vehicle & Traffic Law ("VTL") § 1174. In *Rotenberg v. BusPatrol America LLC* ("*Rotenberg*"), No. 25-cv-438, Plaintiffs Rachel Rotenberg ("Rotenberg") and Shlomo Marks ("Marks") have sued BusPatrol and the Town, claiming that BusPatrol and the Town exceeded their statutory authority under VTL § 1174-a and violated Rotenberg and Marks' procedural due process rights.[1] (*Rotenberg* Compl., *Rotenberg* ECF No. 1-2.) In *Tsadik v. BusPatrol America, LLC* ("*Tsadik*"), No. 25-cv-496, Plaintiff Guy Tsadik ("Tsadik") has sued BusPatrol only, bringing claims for violation of New York Civil Rights Law § 11 and New York General Business Law § 39. (*Tsadik* Compl., *Tsadik* ECF No. 1.) In *Lane v. Town of Hempstead* ("*Lane*"), No. 25-cv-566, Plaintiff Shirely Lane ("Lane") has sued the Town and BusPatrol, bringing claims against both Defendants for violating VTL § 1174-a, Hempstead Code § 186(2)(B), and New York Civil Rights Law § 11,

---

[1] The *Rotenberg* Complaint does not expressly state whether Rotenberg and Marks bring their due process challenge under the New York Constitution, the U.S. Constitution, or both. Rotenberg and Marks have since represented, however, that the *Rotenberg* Complaint does not assert a federal constitutional claim. (*Rotenberg* ECF No. 21.) In light of Rotenberg and Marks' representation, the Complaint in this action does not assert a claim under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and this Court therefore does not have federal question jurisdiction over the *Rotenberg* action under 28 U.S.C. § 1331.

and for engaging in fraudulent inducement, negligent misrepresentation, and unjust enrichment.[2]

(*Lane* Compl., *Lane* ECF No. 1.)

This Memorandum and Order addresses the following:

(1) a letter motion by Rotenberg and Marks, which seeks to remand the *Rotenberg* action (which was originally filed in New York state court) for lack of subject matter jurisdiction (*Rotenberg* Remand Ltr., *Rotenberg* ECF No. 5);

(2) this Court's Order to Show Cause why the *Rotenberg* action should not be remanded to state court for failure to plead diversity jurisdiction (*Rotenberg* Order Show Cause, Jan. 30, 2025);

(3) this Court's Order to Show Cause why the *Lane* action (which was filed in this Court in the first instance) should not be dismissed for failure to plead diversity jurisdiction (*Lane* Elec. Order, Feb. 7, 2025); and

(4) this Court's order in the *Tsadik* action (which was also filed in this Court in the first instance) directing the parties to file a letter addressing any jurisdictional concerns that the parties may have (*Tsadik* Elec. Order, Apr. 21, 2025).

For the reasons explained below, this Court has subject matter jurisdiction over the *Rotenberg*, *Tsadik*, and *Lane* actions pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Further, CAFA's so-called "local controversy" exception, 28 U.S.C. § 1332(d)(4), does not apply and, accordingly, I do not decline to exercise jurisdiction on that basis. Accordingly, I deny Rotenberg and Marks' letter motion seeking remand to state court.

## BACKGROUND

The following facts are taken from the complaints and records in the *Rotenberg*, *Tsadik*, and *Lane* actions, as well as the complaints in three previously filed class actions bringing similar claims against BusPatrol and/or the Town: (1) *Kadinsky v. Town of Hempstead*, Index No. 619279/2023 (N.Y. Sup. Ct. Nassau Cnty.); (2) *Morgulis v. Bus Patrol America*, LLC, No.

---

[2] For the purposes of this Memorandum and Order, I refer to Rotenberg, Marks, Tsadik, and Lane collectively as "Plaintiffs." I refer to BusPatrol and the Town collectively as "Defendants," although I recognize that the Town is not a Defendant in the *Tsadik* action.

3

24-cv-113 (S.D.N.Y.); and (3) *Harris v. Town of Hempstead*, Index No. 611539/2024 (N.Y. Sup. Ct. Nassau Cnty.).[3]

VTL § 1174 makes it unlawful for a vehicle to pass a stopped school bus where the bus (1) has activated its stop arm, (2) has stopped in relation to receiving or discharging school bus passengers, and (3) has certain prescribed markings and equipment notifying drivers that they must stop. (*Rotenberg* Compl. ¶ 6; *Tsadik* Compl. ¶ 2; *Lane* Compl. ¶ 34.) In 2019, the New York legislature enacted VTL § 1174-a, which authorizes municipalities, including the Town, to use camera technology to issue traffic tickets to those who violate VTL § 1174. (*Rotenberg* Compl. ¶ 7; *Tsadik* Compl. ¶ 2; *Lane* Compl. ¶ 35.)

In 2022, the Town used its authority under VTL § 1174-a to adopt Chapter 186 of the Code of Town of Hempstead ("Chapter 186"), which authorizes the Town to issue tickets for violations of VTL § 1174 based on photographic evidence. (*Rotenberg* Compl. ¶ 10; *Tsadik* Compl. ¶ 50; *Lane* Compl. ¶ 41.) The three complaints in *Rotenberg*, *Tsadik* and *Lane* allege that, pursuant to Chapter 186, the Town may only implement camera monitoring and issue tickets within school districts that have consented to participate in the program. (*Rotenberg* Compl. ¶ 16; *Tsadik* Compl. ¶ 24; *Lane* Compl. ¶ 3.) Subsequent to the adoption of Chapter 186, the Town contracted with BusPatrol, a private vendor, to "identif[y] violations, issue[] notices, compile[] evidence packets, and collect[] and disburse[] penalties." (*Rotenberg* Compl. ¶ 12; *see also Tsadik* Compl. ¶ 4; *Lane* Compl. ¶ 19.)

There have been six legal challenges to the Town's program implemented in conjunction with BusPatrol through VTL § 1174-a and Chapter 186.

---

[3] *See Nam v. Perm. Mission of Rep. of Korea to U.N.*, 118 F.4th 234, 244 (2d Cir. 2024) ("Our rule is that, on a challenge to the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional facts by reference to evidence outside the pleadings.").

First, the *Kadinsky* action—filed on November 28, 2023 in the Supreme Court of the State of New York, Nassau County—brings claims against the Town alone for unlawful delegation of executive and prosecutorial authority under VTL § 1174-a, violation of both the federal and New York State constitutional rights to due process, violation of the New York State constitutional right to equal protection, unjust enrichment, conversion, negligent misrepresentation, fraudulent concealment/fraudulent inducement, violation of New York State's prohibitions on excessive fines and fines without reasonable cause, and violation of New York General Business Law § 349. (*Kadinsky* Compl., *Kadinsky* Dkt. 2; *Kadinsky* First Am. Compl., *Kadinsky* Dkt. 18.) In brief, the *Kadinsky* First Amended Complaint (the operative complaint, filed on March 1, 2024) alleges that the tickets issued on behalf of the Town are false and fraudulent, including because BusPatrol fails to compile and evaluate the statutorily required evidence for a VTL § 1174 violation and because the ticket itself contains a false sworn statement by the Town affirming that the requisite statutory elements are met. (*Kadinsky* First Am. Compl. ¶¶ 1–17.)

Second, the *Morgulis* action—filed on November 29, 2023 in the Supreme Court of the State of New York, New York County, and removed to the Southern District of New York on January 5, 2024—brings claims against BusPatrol alone for unlawful delegation of executive and prosecutorial authority under VTL § 1174-a, violation of both the federal and New York State constitutional rights to due process and equal protection, unjust enrichment, conversion, negligent misrepresentation, fraudulent concealment/fraudulent inducement, violation of New York State's prohibitions on excessive fines and fines without reasonable cause, violation of New York General Business Law § 349, and aiding and abetting fraud. (*Morgulis* Compl., *Morgulis* ECF No. 1-1; *Morgulis* Second Am. Compl., *Morgulis* ECF No. 38.) The *Morgulis*

Second Amended Complaint (the operative complaint, filed on August 20, 2024 and dismissed with prejudice on April 11, 2025) is broader than the *Kadinsky* Complaint, alleging facts concerning BusPatrol's ticketing program and procedures in various localities, not just in the Town of Hempstead. (*Morgulis* Second Am. Compl.; Mem. & Order, *Morgulis* ECF No. 64.) Specifically, the *Morgulis* Second Amended Complaint alleges that BusPatrol: (1) trained local government technicians to certify tickets without evidence that a VTL § 1174 violation actually occurred; (2) issued tickets without evidence that a VTL § 1174 violation actually occurred; (3) produced tickets containing false or fraudulently procured sworn certification that a VTL § 1174 violation occurred; (4) prepared evidence packets falsely certifying that there was sufficient evidence of a VTL § 1174 violation; and (5) managed an adjudicatory process that does not comply with the law. (*Morgulis* Second Am. Compl. ¶¶ 62–115.)

Third, the *Harris* action—filed on June 11, 2024 in the Supreme Court of the State of New York, Nassau County—brings claims against the Town and the Nassau County Traffic and Parking Violations Agency for unlawful delegation of executive and prosecutorial authority under VTL § 1174-a, violation of both the federal and New York State constitutional rights to due process, violation of the New York State constitutional right to equal protection, unjust enrichment, conversion, negligent misrepresentation, fraudulent concealment/fraudulent inducement, violation of New York State's prohibitions on excessive fines and fines without reasonable cause, and violation of New York General Business Law § 349. (*Harris* Compl., *Harris* Dkt. 1; *Harris* First Am. Compl., *Harris* Dkt. 84.) The *Harris* First Amended Complaint (the operative complaint, filed on January 27, 2025) raises substantially the same allegations as those in the *Kadinsky* First Amended Complaint. (*Compare Harris* First Am. Compl. *with Kadinsky* First Am. Compl.)

6

Fourth, the *Rotenberg* action—filed on January 24, 2025 in the Supreme Court of the State of New York, Nassau County and removed to this Court on January 26, 2025—brings claims against the Town and BusPatrol for exceeding their statutory authority under VTL § 1174-a and for violating Plaintiffs' due process rights. (*Rotenberg* Compl.) The *Rotenberg* Complaint does not, however, specify whether the due process claim arises from the U.S. Constitution or the New York Constitution. Though similar to all three prior complaints, the *Rotenberg* Complaint includes new allegations that the Town and BusPatrol issued tickets within school districts that did not agree to participate in the ticketing program. (*Id.* ¶ 18.) Specifically, it alleges that Defendants issued a ticket to Rotenberg in an area outside of the school districts' authority and that the hearing concerning Marks' ticket was riddled with procedural flaws, including the introduction of hearsay, the reliance on an allegedly false certification finding Marks liable, and Defendants' failure to provide a written disposition of the hearing results. (*Id.* ¶¶ 42–64.)

Fifth, the *Tsadik* action—filed in the Eastern District of New York on January 29, 2025—brings claims against BusPatrol alone for unjust enrichment, conversion, negligent misrepresentation, and violation of New York Civil Rights Law § 11. (*Tsadik* Compl.) Similar to the *Rotenberg* Complaint, the *Tsadik* Complaint's allegations center around issues concerning BusPatrol's alleged ticketing within school districts that did not consent to participate in the program. (*Id.* ¶¶ 32–49.)

Sixth, the *Lane* action—filed in the Eastern District of New York on January 31, 2025—brings claims against the Town and BusPatrol for exceeding Defendants' authority under VTL § 1174-a and Chapter 186, fraudulent concealment/fraudulent inducement, negligent misrepresentation, violation of New York Civil Rights Law § 11, and unjust enrichment. (*Lane*

Compl.) As with the *Rotenberg* and *Tsadik* Complaints, the *Lane* Complaint is premised on the theory that Lane and members of the putative class were unlawfully ticketed within school districts that did not consent to participate in the program. (*Id.* ¶¶ 52–57.)

## PROCEDURAL HISTORY

Below, I summarize the relevant procedural history for each of the three actions before this Court.

### I.    *Rotenberg* **Action**

As previously noted, Rotenberg and Marks filed the *Rotenberg* action in the Supreme Court of the State of New York, Nassau County, on January 24, 2025. (*Rotenberg* Compl.) On January 26, 2025, Defendants timely removed the case to this Court. (*Rotenberg* Not. Removal, *Rotenberg* ECF No. 1.) On January 27, 2025, Rotenberg and Marks filed a letter motion seeking to remand the *Rotenberg* action to state court. (*Rotenberg* Remand Ltr.)

On January 30, 2025, this Court issued an order directing BusPatrol to show cause why the case should not be remanded to state court for lack of subject matter jurisdiction. (*Rotenberg* Order Show Cause, Jan. 30, 2025.) In the *Rotenberg* Order to Show Cause, I specifically found that BusPatrol's Notice of Removal had established, as required for CAFA jurisdiction, that the proposed class is greater than 100 individuals and that the amount in controversy exceeds $5 million. (*Id.*) Further, I found that the *Rotenberg* Complaint and Notice of Removal had established that BusPatrol is a citizen of Delaware and Virginia and that the Town is a citizen of New York, but failed to establish the citizenships of Rotenberg and Marks. (*Id.*)

On February 13, 2025, BusPatrol filed letters opposing Rotenberg and Marks' letter motion seeking remand (*Rotenberg* Remand Opp'n Ltr., *Rotenberg* ECF No. 11) and responding to the Court's Order to Show Cause (*Rotenberg* Order Show Cause Resp., *Rotenberg* ECF No.

12). On February 14, 2025, Rotenberg and Marks filed a reply letter without the Court's leave. *Rotenberg* Remand Reply Ltr., *Rotenberg* ECF No. 13; *see also* Judge Choudhury Individual Rule 5.1.3 (providing only for the submissions of a response letter, not a reply letter).

On April 21, 2025, I issued an order noting that the *Rotenberg* Complaint apparently asserts a federal constitutional claim and directed the parties to file submissions addressing whether, in light of that claim, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Elec. Order, Apr. 21, 2025 (citing *Rotenberg* Compl. ¶¶ 83–84 & 18 at ¶ c).) On May 2, 2025, the parties filed a joint response representing that "Plaintiffs have since explained that they are not pursuing a federal due process claim." (*Rotenberg* ECF No. 21 at 1.)

On May 5, 2025, the Town filed a waiver of service (*Rotenberg* ECF No. 24) and counsel for the Town filed notices of appearance (*Rotenberg* ECF Nos. 22–23). The Town has not filed any submissions concerning subject matter jurisdiction.

## II.    *Tsadik* Action

The *Tsadik* action was filed in the Eastern District of New York on January 29, 2025, and initially assigned to District Judge Diane Gujarati. (*Tsadik* Compl.; *Tsadik* Elec. Not., Jan. 29, 2025.) On February 24, 2025—several weeks after the filing of the *Lane* action—Tsadik filed a letter motion seeking to consolidate all three actions under the *Tsadik* action and to appoint Lifshitz Law Firm, P.C. (counsel to Tsadik in this *Tsadik* action) and Hach Rose Schirripa & Cheverie, LLP (counsel to Lane in the *Lane* action) as interim co-lead counsel to the class. (*Tsadik* Consolidation Ltr., *Tsadik* ECF No. 13.) On February 25, 2025, the *Tsadik* action was reassigned to my docket as related to the first-filed *Rotenberg* action. (*Tsadik* Elec. Not., Feb. 25, 2025.)

On April 21, 2025, in light of the jurisdictional dispute raised in *Rotenberg*, I issued an order directing the *Tsadik* parties to file letters addressing any jurisdictional concerns about this action. (*Tsadik* Elec. Order, Apr. 21, 2025.) Tsadik responded on April 28, 2025 (*Tsadik* Def. Jurisdiction Ltr. *Tsadik* ECF No. 24) and BusPatrol responded on May 5, 2025 (*Tsadik* Pl. Jurisdiction Ltr. *Tsadik* ECF No. 25), both asserting that federal jurisdiction is proper.

### III.   *Lane* Action

The *Lane* action was filed in the Eastern District of New York on January 31, 2025. (*Lane* Compl.) On February 7, 2025, I issued an order directing Lane to show cause why the case should not be dismissed for lack of subject matter jurisdiction. (*Lane* Order Show Cause, Feb. 7, 2025.) As I found with respect to the *Rotenberg* Complaint, I found that the *Lane* Complaint established that the proposed class is greater than 100 individuals and that the amount in controversy exceeds $5 million. (*Id.*) Further, I found that the *Lane* Complaint had established that Lane and the Town are citizens of New York but failed to establish the citizenship of BusPatrol. (*Id.*) On February 21, 2025, Lane filed a letter responding to the Court's Order to Show Cause, and BusPatrol likewise filed a letter response on March 7, 2025. (*Lane* Order Show Cause Lane Resp., *Lane* ECF No. 16; *Lane* Order Show Cause BusPatrol Resp., *Lane* ECF No. 17.)

### LEGAL STANDARD

This Court has an independent obligation to determine whether subject matter jurisdiction exists over this case. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," and district courts "may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617–18 (2d Cir. 2019) (quotation marks omitted). In any case removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Jurisdiction under CAFA, 28 U.S.C. § 1332(d), requires a "class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6)).

## DISCUSSION

Rotenberg and Marks, who filed a letter motion to remand the *Rotenberg* action to state court, are the only parties to the three instant actions who contest this Court's jurisdiction. (*Rotenberg* Remand Ltr.) They concede that this Court has jurisdiction over the *Rotenberg* action under CAFA but argue that all elements of the "local controversy" exception[4] are met and that I

---

[4] In full, the local controversy exception provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—
    (A)(i) over a class action in which—
        (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
        (II) at least one defendant is a defendant—

am therefore required to decline to exercise jurisdiction here. (*Id.*) Specifically concerning the local controversy exception's requirement that there has been "no other class action" filed within the last three years "asserting the same or similar factual allegations" as the present class action, Rotenberg and Marks acknowledge that the *Morgulis* and *Kadinsky* actions were filed within three years of the filing of the *Rotenberg* action but contend that the operative complaints in *Morgulis* and *Kadinsky* do not assert "similar factual allegations" as the *Rotenberg* Complaint. (*Id.*) As to the *Harris* action, they note that the *Harris* First Amended Complaint was filed *after* the *Rotenberg* Complaint and claim, without elaboration or citation, that "[t]he original complaint that existed prior to the filing of [the *Rotenberg*] action did not have any factual allegations that were the same or similar to the allegations of this action." (*Rotenberg* Remand Reply Ltr. at 1.)

BusPatrol, which removed the *Rotenberg* action to federal court and which is also party to the *Tsadik* and *Lane* actions, has provided submissions on all three dockets arguing that this

---

    (aa) from whom significant relief is sought by members of the
         plaintiff class;
    (bb) whose alleged conduct forms a significant basis for the
         claims asserted by the proposed plaintiff class; and
    (cc) who is a citizen of the State in which the action was
         originally filed; and
    (III) principal injuries resulting from the alleged conduct or any
         related conduct of each defendant were incurred in the State in
         which the action was originally filed; and
  (ii) during the 3-year period preceding the filing of that class action, no
       other class action has been filed asserting the same or similar factual
       allegations against any of the defendants on behalf of the same or other
       persons; or
  (B) two-thirds or more of the members of all proposed plaintiff classes in
      the aggregate, and the primary defendants, are citizens of the State in
      which the action was originally filed.

28 U.S.C. § 1332(d)(4).

Court has CAFA jurisdiction over all three actions and that the local controversy exception does not apply. (*Rotenberg* Remand Opp'n Ltr.; *Tsadik* Def. Jurisdiction Ltr.; *Lane* Order Show Cause Resp.) Specifically, BusPatrol points to the *Morgulis*, *Kadinsky*, and *Harris* actions, arguing that the operative pleadings in all three of those cases assert "similar factual allegations" as the allegations in the three cases now before this Court. (*Rotenberg* Remand Opp'n Ltr. at 1–2; *Tsadik* Def. Jurisdiction Ltr.; *Lane* Order Show Cause Resp.) Likewise, Tsadik and Lane, who filed their respective actions in federal court in the first instance, agree that this Court has CAFA jurisdiction and that the local controversy exception does not apply in light of the prior *Morgulis*, *Kadinsky*, and *Harris* actions. (*Tsadik* Pl. Jurisdiction Ltr.; *Lane* Order Show Cause Resp.) The Town has not provided any submissions concerning its position on this Court's jurisdiction.

As set forth below, this Court has subject matter jurisdiction over *Rotenberg*, *Tsadik*, and *Lane* under CAFA. Further, the local controversy exception to CAFA jurisdiction does not apply.

## I.    CAFA Jurisdiction

The party invoking CAFA jurisdiction must allege a class of 100 or more members and must also show "that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million." *Blockbuster, Inc.*, 472 F.3d at 58 (quotation marks omitted). In satisfying the "reasonable probability" burden, there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 961 (S.D.N.Y. 2014) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.2006)). Finally, the party invoking CAFA jurisdiction must show minimal diversity. *See* 28 U.S.C. § 1332(d).

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," or in other words, "the place where [that individual] has his true fixed home and

principal establishment, and to which, whenever he is absent, he has the intention of returning."
*Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53 (2d Cir. 2019). It is well-established that
allegations of "residence alone [are] insufficient to establish domicile for jurisdictional
purposes." *Id.*; *accord RainMakers Partners LLC v. NewSpring Cap., LLC*, No. 23-899, 2024
WL 1846321, at *2 n.1 (2d Cir. Apr. 29, 2024) ("[A] complaint that alleges that the plaintiff and
defendant are merely residents of different states has failed adequately to allege the existence of
diversity jurisdiction."). In order to determine an individual's domicile, courts consider factors
including:

> current residence; voting registration; driver's license and automobile registration;
> location of brokerage and bank accounts; membership in fraternal organizations,
> churches, and other associations; places of employment or business; . . . payment
> of taxes; . . . whether a person owns or rents his place of residence; the nature of
> the residence (i.e., how permanent the living arrangement appears); . . . and the
> location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Lever v. Lyons*, No. 16-cv-5130, 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (internal
citations omitted); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d
Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property,
bank accounts, places of business or employment.") (internal citation omitted).

Under CAFA, an "unincorporated association" is "deemed to be a citizen of the State
where it has its principal place of business and the State under whose laws it is organized." 28
U.S.C. § 1332(d)(10). CAFA does not define the term "unincorporated association," and the
Second Circuit has not ruled on whether the term encompasses limited liability companies
("LLCs"). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). However, the
Fourth and Tenth Circuits, as well as district courts in the Second Circuit, have determined that
an LLC is an unincorporated association under CAFA. *See, e.g., Ferrell v. Express Check
Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010); *Siloam Springs Hotel, L.L.C. v. Century*

*Sur. Co*., 781 F.3d 1233, 1237 n.1 (10th Cir. 2015); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261, 2015 WL 5155934, at *1–2 (S.D.N.Y. Sept. 2, 2015). As noted in the *Rotenberg* and *Lane* Orders to Show Cause, I agree with the reasoning of the Fourth and Tenth Circuits and find that BusPatrol, as an LLC, is an unincorporated association under 28 U.S.C. § 1332(d)(10).

As set forth below, this Court has subject matter jurisdiction under CAFA with respect to all three actions:

In *Rotenberg*, the proposed class is greater than 100 individuals because the *Rotenberg* Complaint alleges that the action pertains to approximately 80,000 issued traffic tickets. (*Rotenberg* Compl. ¶ 67.) The $5 million amount in controversy is also met, based on Rotenberg and Marks' claims on behalf of two putative classes collectively seeking "compensatory damages . . . believed to exceed the sum of $67,500,000." (*Id.* at 17.)[5] Finally, minimal diversity is met based on the pleadings and BusPatrol's supplemental submissions. Plaintiffs Rotenberg and Marks are citizens of New York because each maintains a current residence and vehicle registration in New York. Rotenberg ECF No. 12-1 ¶¶ 2–7 (BusPatrol CFO declaration attesting

---

[5] The three Complaints assert slightly different allegations concerning the dollar amount for fines issued pursuant to VTL § 1174, as implemented through VTL § 1174-a and Chapter 186: the *Rotenberg* Complaint alleges "fines of $250 for a first violation and up to $300 for each subsequent violation in an 18-month period" (*Rotenberg* Compl. ¶ 8); the *Tsadik* Complaint alleges "fines starting at $250 for a first violation, and as high as $300 for subsequent violations within an 18-month period" (*Tsadik* Compl. ¶ 21); and the *Lane* Complaint alleges "fines of not less than $250.00 and up to $400.00 for a first violation and up to $750.00 for a second violation in a three-year period" (*Lane* Compl. ¶ 39). $67,500,000 in "compensatory damages" (presumably compensating class members for the cost of their fines) divided by 80,000 traffic tickets would imply an average fine $843.75, which is implausible given the three Complaints' allegations concerning the fine amount range. Nevertheless, the amount in controversy is met because the fines corresponding to 80,000 traffic tickets would only need to average $62.50 per ticket in order to meet the $5 million threshold under CAFA. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) ("[A party] invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied." (citation omitted)).

that BusPatrol sent tickets to Rotenberg's and Marks' addresses based on their New York state vehicle registration data); *see Lever*, 2021 WL 302648, at *7 (finding current residence and state of automobile registration to be probative of domicile). Defendant BusPatrol is a citizen of Delaware and Virginia because, as its CFO attests in a declaration submitted in connection with its Notice of Removal, BusPatrol is an LLC organized under the laws of Delaware with its principal place of business in Virginia. (*Rotenberg* ECF No. 1-2 ¶ 2.) Defendant the Town is a municipal corporation existing under the laws of New York and with its principal place of business in New York. (*Rotenberg* Compl. ¶ 4.) Accordingly, since at least one Defendant is a citizen of a different state than one named Plaintiff, minimal diversity under CAFA is met.

In *Tsadik*, the proposed class is greater than 100 individuals because the *Tsadik* Complaint alleges that the action also pertains to approximately 80,000 issued traffic tickets. (*Tsadik* Compl. ¶ 41.) The $5 million amount in controversy is also met, based on Tsadik's class claims seeking damages of approximately $20 million. (*Id.* ¶ 7.) The minimal diversity requirement is likewise met. Tsadik is a citizen of New York, based on Tsadik's New York resident and vehicle owner who received multiple traffic tickets within the Town. (*Id.* ¶¶ 14, 54.) As noted above, Defendant BusPatrol is a citizen of Delaware and Virginia. (*Id.* ¶ 18; BusPatrol Corporate Disclosure Statement, *Tsadik* ECF No. 9.) The Town is not a Defendant in the *Tsadik* action.

In *Lane*, the proposed class is greater than 100 individuals because, as with the *Rotenberg* and *Tsadik* Complaints, the *Lane* Complaint alleges that the action pertains to approximately 80,000 issued traffic tickets. (*Lane* Compl. ¶ 6.) The $5 million amount in controversy is also met based on Lane's class claims seeking damages of approximately $20 million. (*Id.*) Finally, minimal diversity is met based on the pleadings and Lane's supplemental submissions. Plaintiff

Lane is a citizen of New York, based on Lane's New York residence and New York driver's license. (*Id.* ¶ 17.) And again, as noted above, Defendant BusPatrol is a citizen of Delaware and Virginia, and the Defendant the Town is a citizen of New York. (*Id.* ¶ 18; *Lane* ECF Nos. 16-3 (BusPatrol Delaware Division of Corporations Certificate), 16-4 (BusPatrol Filings with New York State), and 16-5 (BusPatrol Corporate Disclosure Statement).)

Accordingly, this Court has CAFA jurisdiction over all three cases—*Rotenberg*, *Tsadik*, and *Lane*.

## II.    Local Controversy Exception

Even where a district court has CAFA jurisdiction over a putative class action, the court "shall decline to exercise jurisdiction" under the so-called "local controversy exception" where the following requirements are met:

(1) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed";

(2) "at least 1 defendant is a defendant . . . from whom significant relief is sought . . . , whose alleged conduct forms a significant basis for the claims asserted . . . , and who is a citizen of the State in which the action was originally filed";

(3) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and

(4) "during the 3-year period preceding the filing of [the instant] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."

28 U.S.C. § 1332(d)(4)(A). Although the local controversy exception is mandatory, it is not a jurisdictional bar. *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013) (concluding that "Congress's use of the term 'decline to exercise'" in the local controversy exception "means that the exception is not jurisdictional").

The Second Circuit has not yet ruled on the scope of the "no other class action" requirement for the local controversy exception, but other circuits and district courts in this Circuit that have done so have generally interpreted it in light of the view that the local controversy exception "is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole" and with "all doubts resolved in favor of exercising [federal] jurisdiction over the case." *Dutcher v. Matheson*, 840 F.3d. 1183, 1190 (10th Cir. 2016) (quoting S. Rep. No. 109–14, at *42). Accordingly, in determining whether a class action filed within the preceding three years "assert[s] the same or similar factual allegations against any of the defendants," courts have construed the statutory language broadly. *Id.* "[T]he inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action[] were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)." *Palladino v. JP Morgan Chase & Co.*, No. 23-cv-1215, 2023 WL 4034358, at *7 (E.D.N.Y. June 15, 2023); *see also Schutte v. Ciox Health, LLC*, 28 F.4th 850, 859 (7th Cir. 2022) ("Differences in the legal theories . . . do not place two complaints with similar factual allegations outside the provision's sweep."); *Dutcher*, 840 F.3d at 1192 ("The causes of action in the [other class action] and the causes of action at issue in this case fundamentally rely on demonstrating the same facts."). In other words, courts should look to the similarities in the *factual* allegations of the relevant class actions, "without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories." *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 508–09 (3d Cir. 2013) (citing S. Rep. No. 109–14, at *41).

For example, in *Dutcher*, the Tenth Circuit affirmed a district court's finding that an earlier filed class action involved "similar factual allegations" as the class action at issue, where the pleadings in both cases alleged that the defendants had conducted extrajudicial home foreclosures in violation of Utah law, even though the cases brought claims under different statutes. 840 F.3d at 1191–92. Likewise, in *Schutte*, the Seventh Circuit, citing *Dutcher*, affirmed a district court's finding that two class actions had involved "similar factual allegations" despite the fact that one case brought claims under Montana law while another brought claims under Wisconsin law. 28 F.4th at 859.

The parties in all three actions do not dispute that the first three requirements for the local controversy exception—that greater than two-thirds of putative class members are citizens of New York, that at least one defendant is a citizen of New York from whom "significant" relief is sought, and that the principal injuries occurred in New York—are met. (*See Rotenberg* Remand Ltr. at 1; *Rotenberg* Remand Opp'n Ltr. at 1–2; *Tsadik* Def. Jurisdiction Ltr.; *Tsadik* Pl. Jurisdiction Ltr.; *Lane* Order Show Cause Resp.) I agree with the parties with one exception, as explained below.

First, I can infer based on the Complaint in each action that greater than two-thirds of the putative class members in each action are citizens of New York, given that each action concerns traffic tickets issued in the Town of Hempstead, New York to individuals who allegedly violated traffic laws within that jurisdiction. (*Rotenberg* Compl. ¶¶ 65–68; *Tsadik* Compl. ¶¶ 50–63; *Lane* Compl. ¶¶ 24–33.) While some alleged recipients of the 80,000 issued traffic tickets were almost certainly non-citizens driving through the Town, it is eminently reasonable to infer that at least two-thirds of the people who were ticketed are, at a minimum, citizens of New York (and likely local Long Island residents). *See Commiso v. PricewaterhouseCoopers LLP*, No. 11-cv-5713,

2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012) (holding that district courts may "simply make reasonable assumptions about the makeup of the putative class"); *Kurovskaway v. Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017) ("While it is certainly possible that some home care workers and putative class members employed by Defendant [in New York] may commute to New York from neighboring states . . . it is reasonable to infer from the facts mentioned above that two-thirds or more of the putative class members . . . are citizens of New York State.").

Second, and for substantially the same reasons, I also find that the principal alleged injuries occurred in New York: namely the receipt of traffic tickets in school districts on Long Island that did not agree to participate in the Town's ticketing program and through a flawed procedure in violation of the class members' due process rights.

Third, with respect to the *Rotenberg* and *Lane* actions, at least one defendant (the Town of Hempstead) is a citizen of New York. However, the Town is not a defendant in the *Tsadik* action and, in fact, the only defendant in that action, BusPatrol, is a citizen of Delaware and Virginia. Accordingly, the requirement of the local controversy exception that at least one defendant be a citizen of the state in which the action was originally filed is not met with respect to *Tsadik*. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).

As to the "no other class actions" prong of the local controversy exception, there are at least two class actions filed within three years prior to *Rotenberg*, *Tsadik*, and *Lane* "asserting the same or similar factual allegations" as the allegations in the present cases: (1) the *Kadinsky* action, filed on November 28, 2023 with its operative pleading filed on March 1, 2024; and (2) the *Morgulis* action, filed on November 29, 2023 with its operative pleading filed on August 20, 2024. *See* 28 § U.S.C. s1332(d)(4)(A)(ii).

As a preliminary matter, I agree with Rotenberg and Marks that courts should look to the then-operative complaint in the previously-filed action to determine whether it involves factual allegations similar to the later-filed action—as opposed to an amended complaint containing allegations revised after the filing of the later-file action. (*See Rotenberg* Remand Reply Ltr. at 1.) Nevertheless, I do not address Rotenberg and Marks' argument that the complaint in *Harris* operative at the time of the filing of the *Rotenberg* Complaint "did not have any factual allegations that were the same or similar to the allegations of [Rotenberg]" because, as explained below, I find that the *Morgulis* and *Kadinsky* complaints satisfy the "same or similar factual allegations" requirement under the local controversy exception. (*See id.*)

Indeed, the operative *Morgulis* and *Kadinsky* Complaints, both filed within three years of the instant actions, assert "similar factual allegations" as those set forth in the later-filed *Rotenberg*, *Tsadik*, and *Lane* Complaints. They include allegations that:

(1) the Town contracted with BusPatrol to implement a program by which Defendants would ticket individuals based on photographic evidence that they passed stopped school buses in violation of VTL § 1174 (*Morgulis* Second Am. Compl. ¶¶ 53–61; *Kadinsky* First Am. Compl. ¶¶ 4–6; *Rotenberg* Compl. ¶¶ 13–14; *Tsadik* Compl. ¶¶ 25–31; *Lane* Compl. ¶¶ 46–49);

(2) that, pursuant to an agreement with the Town, BusPatrol equips school buses with cameras, gathers evidence for potential violations of VTL § 1174, identifies such violations, issues tickets, prepares evidence packets, and collects and disburses penalties in exchange for a significant share of the ticket revenue (*Morgulis* Second Am. Compl. ¶¶ 53–61; *Kadinsky* First Am. Compl. ¶¶ 4–6; *Rotenberg* Compl. ¶ 13; *Tsadik* Compl. ¶¶ 25–31; *Lane* Compl. ¶¶ 46–49); and

(3) that, in issuing tickets through BusPatrol, the Town has exceeded the authority granted to it under VTL § 1174-a and Chapter 186 (*Morgulis* Second Am. Compl. ¶¶ 173–75, 228–29; *Kadinsky* First Am. Compl. ¶¶ 140–42, 147–48; *Rotenberg* Compl. ¶¶ 29–41; *Tsadik* Compl. ¶¶ 83–90; *Lane* Compl. ¶¶ 58–66); and

(4) that the hearing process for contesting tickets issued through BusPatrol contains procedural flaws, in particular that the photographic evidence of the alleged violation is not made available for review and inspection at the hearing (*Morgulis* Second Am.

Compl. ¶¶ 93–116; *Kadinsky* First Am. Compl. ¶¶ 4–6; *Rotenberg* Compl. ¶¶ 29–41; *Tsadik* Compl. ¶¶ 25–31; *Lane* Compl. ¶¶ 46–49).

In their letter motion seeking remand, Rotenberg and Marks assert (1) that *Kadinsky* and *Morgulis* "relat[e] to allegations of misrepresentation and concealment by the Town of Hempstead" and (2) that "the allegations and causes of action of those cases have nothing to do with, and are not similar to, the allegations and causes of action of this case." (*Rotenberg* Remand Ltr. at 1–2.) On reply, they argue that *Morgulis* and *Kadinsky* "revolve around claims of unlawful delegation of authority and allegedly fraudulent practices relating to the notices of liability issued by Defendant and the evidence packets created by Defendant," while the *Rotenberg* Complaint focuses on "the operation of BusPatrol in school districts in which they were not allowed to operate due to a lack of contract" and "the lack of due process at the hearing due to the hearing procedure and lack of ability to appeal." (*Rotenberg* Remand Reply Ltr. at 1.)

The arguments by Rotenberg and Marks are unavailing because, as explained above, the operative *Morgulis* and *Kadinsky* Complaints assert "similar factual allegations" as those set forth in the *Rotenberg* Complaint. Although Rotenberg and Marks are correct that the *Rotenberg* Complaint does not bring the exact same causes of action as the operative *Morgulis* and *Kadinsky* Complaints, and that, unlike those prior complaints, the claim for relief in the *Rotenberg* Complaint is based in part on the theory that Defendants issued tickets outside of their permitted jurisdictions, these differences do not negate the significant similarities outlined above. *See Vodenichar*, 733 F.3d at 508–09 (holding that courts should analyze the "no other class actions" requirement "without regard to . . . whether . . . their claims arise from an identical event[] or involve the same causes of action or legal theories"). Further, to the extent that Rotenberg and Marks seek to distinguish the *Rotenberg* Complaint on the basis that it alleges "the lack of due process at the hearing due to the hearing procedure," I note that the *Kadinsky*

22

Complaint also raises allegations concerning the allegedly faulty hearing procedure. (*Cf. Rotenberg* Compl. ¶ 34 ("The owner of the vehicle is not provided any copies of [the evidence], neither in advance nor at the hearing. . . . Of course, the owner is not able to test the veracity of the alleged statements or photos."); *Kadinsky* Compl. ¶ 14 ("The photographic evidence of a violation is not made available at the hearing for review and inspection.").) In fact, the *Rotenberg* Complaint explicitly cites the *Kadinsky* Complaint as a factual analogue, stating: "As described in *Kadinsky v. Town of Hempstead*, the [tickets] issued to the owners of the motor vehicles do not set forth any evidence to satisfy the elements requires for a . . . violation." (*Rotenberg* Compl. ¶ 30.)

Accordingly, the "no other class actions" prong of the local controversy exception is not satisfied and thus the exception does not apply to *Rotenberg*, *Tsadik*, and *Lane*.

## CONCLUSION

For the reasons set forth above, this Court has subject matter jurisdiction over the *Rotenberg*, *Tsadik*, and *Lane* actions pursuant to CAFA. Further, the local controversy exception to CAFA does not apply. Accordingly, Rotenberg and Marks' letter motion seeking remand (*Rotenberg* ECF No. 5) is denied.

Dated: Central Islip, New York
June 16, 2025

　　　　　*/s/ Nusrat J. Choudhury*　　　　
NUSRAT J. CHOUDHURY
United States District Judge